JOSEPH GERARDI, Jr., Appellant, v. HARRY B. GARDNER; HENRY W. FEMMER, Trustee, Intervener.

**Division One, March 3, 1914.**

1. **PRACTICE: Demurrer to Evidence: Admission of Truthfulness.** In a suit for money had and received, an instruction telling the jury that plaintiff is not entitled to recover, asked by defendant at the close of plaintiff's case and given by the court, admits the truthfulness of plaintiff's evidence.

2. **MONEY HAD AND RECEIVED: False Representations: Purchase of Land.** Evidence that defendant agreed to buy a lot for plaintiff and have it deeded to him, and received money from him for that purpose, and with it bought the lot and took the title in his own name, and falsely represented to him that the lot had been conveyed to plaintiff and that there was a mortgage thereon which was about to become due and must be paid at once, and by those false representations obtained from plaintiff enough money to pay said pretended incumbrance, is sufficient to make out a prima-facie case for money had and received.

3. ———: ———: ———: **Settlement.** And defendant having by such fraudulent representations and deceit obtained plaintiff's money, a contract of settlement, in which plaintiff acknowledged the receipt of the money so obtained, which is itself based on the rankest fraud, is no bar to a recovery of the money.

4. ———: **Tender to Restore Status Quo.** A failure to tender back the worthless stock deceptively and fraudulently given to plaintiff in a pretended settlement of his claim for money received by false representations and deceit, shown by the evidence to be entirely worthless, will not defeat plaintiff's suit to rcover the money so obtained.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

REVERSED AND REMANDED (*with directions*).

*R. M. Nichols* for appellant.

(1) In considering the action of the court in directing the verdict the plaintiff is entitled to every inference of fact which the jury might have drawn from the evidence. Lee v. Geo. Knapp & Co., 137 Mo. 385; Barth v. Elevated Ry. Co., 142 Mo. 536; Young v. Webb City, 150 Mo. 341. (2) If the representations were made it was for the jury to say whether the representations were false and fraudulent. Mooney v. Davis, 75 Mich. 188; Bigler v. Atkins, 118 N. Y. 671; Bartlett v. Smith, 17 Fed. 668. (3) The jury would have inferred, from the fact that Gardner immediately used plaintiff's money to pay labor and material bills on his wife's house and appropriated large sums to his own use (as conclusively shown by his bank account and returned checks), that the receipt of November 1, 1906, was fraudulently designed and intended by him to protect himself from his acts of embezzlement; and the jury had the sole right to pass on this fraudulent intention. Fraud is a question for the jury. 14 Am. & Eng. Ency. Law (2 Ed.), p. 205; 1 Am. & Eng. Anno. Cas., 446; Kuykindall v. McDonald, 15 Mo. 416, 57 Am. Dec. 212 and note; Bidault v. Wales, 19 Mo. 36, 59 Am. Dec. 327 and note; Owens v. Rector, 44 Mo. 390; 2 Thompson on Trials, p. 1440, sec. 1945. (4) The receipt in itself was a badge of fraud, when it was shown to have no consideration and to have been extorted

from the Gerardis under the promise of vesting the corporation with the title, which had been taken contrary to the instructions, by Gardner in his own name, and when connected with the act of Gardner, before he vested the corporation with the title, in placing a mortgage thereon in favor of his brother for $600,000. These fraudulent acts should have been submitted to the jury. Fout v. Giraldin, 64 Mo. App. 165; Brown v. Worthington, 162 Mo. App. 508; Lappin v. Crawford, 186 Mo. 463; Hackley v. Headley, 45 Mich. 517; Adams v. Schiffer, 11 Colo. 15. (5) A false representation as to the ownership of property, and of solvency for the purpose of inducing credit, is actionable. Ring v. Paint Co., 44 Mo. App. 111; Judd v. Weber, 55 Conn. 267; Kane v. Dickenson, 60 N. H. 371; Childs v. Merrill, 63 Vt. 463; Rothschild v. Mack, 115 N. Y. 1; Eaton, etc., Co. v. Avery, 83 N. Y. 31; Orr v. Moore, 105 Iowa, 409; Note to Childs v. Merrill, 14 L. R. A. 264. (6) A receipt is evidence of payment therein recited, but always open to explanation, and when it was shown that no money passed but was given for the purpose of getting Gardner to convey the title of the property to the Monarch Realty Company, the court should have declared as a matter of law that it was not given in discharge of the previous moneys received by Gardner and did not constitute an estoppel in this case. 30 Cyc. 1288; 17 Cyc. 630; Squier v. Evans, 127 Mo. 514; Wagmann v. Rothwell, 121 Mo. App. 413; Strawn v. Railroad, 120 Mo. App. 142. (7) Fraud may be inferred; it may be established by circumstantial as well as by direct evidence, and proof of it may be inferred from the surrounding facts and circumstances. State to use v. Estate, 6 Mo. App. 6; Groshke v. Brandenheimer, 15 Mo. App. 553; Spangler v. Kaufman, 46 Mo. App. 652; Blackwell v. Frey, 49 Mo. App. 638; Ridge v. Green, 53 Mo. App. 483; Gordon v. Ismay, 55 Mo. App. 325; Muenke v. Bunch, 9 Mo. 409; Hop-

kins v. Stewart, 58 Mo. 201; Bogort v. Borchert, 59 Mo. 83. (8) If it be conceded that the receipt of November 1, 1906, for the stock had anything to do with the release of the two sums of money, it was proper for plaintiff to set up its fraudulent procurement in the reply, and the question of its fraudulent procurement should have been submitted to the jury. R. S. 1909, sec. 1812; State ex rel. v. Stuart, 111 Mo. App. 478; Girard v. Car Wheel Co., 123 Mo. App. 358; Roberts v. Lead Co., 95 Mo. App. 581. (9) Whether the money was turned over to Gardner upon a contract, either express or implied, under which he was to purchase the real estate and build a hotel thereon at a cost of $725,000, or whether, as claimed by plaintiff, it was turned over to him for the purpose of purchasing a lot for plaintiff and for the purpose of paying off an alleged deed of trust, if it was shown, as we claim it was, that the false representations made by Gardner to the plaintiff were the superinducing cause of entering into either contract, then plaintiff was entitled to recover, under the form of action of money had and received, all such sums of money that did not go into the purchase of the lot, or which were not by Gardner applied upon the alleged contract to build said hotel, but appropriated to his own use; and this without any rescission of contract. 27 Cyc. 863, 866; Note to Martin v. Hutton, 36 L. R. A. (N. S.) 603; Johnson v. Continental Ins. Co., 39 Mich. 33; Wilson v. Ranch Co., 22 C. C. A. 244; Lockwood v. Kelsea, 41 N. H. 185; Stout v. Caruthers Hdw. Co., 131 Mo. App. 220. (10) The action for money had and received was an appropriate remedy for moneys obtained by the deceit and fraudulent representations of the defendant and no rescission was necessary. Richardson v. Drug Co., 92 Mo. App. 515; Henderson v. Koenig, 192 Mo. 690; Brooks v. Church, 128 Pa. St. 408; Note to Weber v. Lewis, 35 L. R. A. (N. S.) 364.

*Marion C. Early* for intervener.

(1) The burden is upon appellant to establish error, as all presumptions are indulged in favor of the judgment in the lower court. Rankin v. Railroad, 150 Mo. App. 32. (2) The judgment of the lower court directing a verdict is supported by incontrovertible evidence and the inconsistent, contradictory oral testimony when opposed to physical law and facts is without probative force. Shipley v. Railroad, 144 Mo. App. 7; Dilly v. Railroad, 55 Mo. App. 123. (3) Upon the admitted facts appellant acquired 1,500 shares of stock in a corporation, which at the time was the owner of property on which $20,000 cash had been paid and many other expenditures made for the benefit of the company. Appellant over his own signature had certified that the stock was one-half paid. The stock admittedly was therefore of value and a rescission of the contract of sale was a condition precedent to his right of recovery in this action. Blount v. Spratt, 113 Mo. 48. (4) Appellant testified that when he signed the agreement for the purchase of the 1,500 shares of stock on November 1, 1906, he did so deliberately without any intention of paying anything for it, and for the sole purpose of securing to himself the title to the property. His purpose was therefore admittedly fraudulent. A court will grant no relief under such circumstances. The court should leave him where it found him. King v. Ordway, 73 Iowa, 735. (5) The reply admits that the stock was retained and has never been tendered back. A conditional tender is no tender at all. Upon the admitted facts the sale of stock is binding upon appellant, and the contract being in full force nothing is due from Gardner to appellant, and the court was correct in declaring that appellant was not entitled to recover. Gerardi v. Christie, 148 Mo. App. 75. (6) It was immaterial whether or not Gardner was worth a large sum of money. There is no

averment that he agreed personally to build the hotel. It was immaterial whether the title was in the name of Gardner or some other trustee for the corporation. (7) Upon the record the judgment is for the right party. The evidence of the Gerardis is entitled to no weight being in conflict with undisputed facts and necessary conclusions. Comm. Co. v. Aaron, 145 Mo. App. 307. (8) The pleadings filed by appellant admit the execution of the instrument dated November 1, 1906, the delivery to and continued retention by him of the certificate for 1500 shares of stock and his fraudulent intent not to pay a cent of what he agreed to pay. His position was the result of his own fraud, and the lower court properly held he was not entitled to recover. Bell v. Campbell, 123 Mo. 1; Morrison v. Juden, 145 Mo. 282. (9) The pleadings and testimony offered by plaintiff recognize the necessity of the avoidance by appellant of the agreement of sale dated November 1, 1906, to entitle him to recover. The case was tried upon that theory, and it will be disposed of by this court on the same theory upon which it was tried in the court below. Manzie v. Galdenberg, 149 Mo. App. 12; Hume v. Hale, 146 Mo. App. 659.

WOODSON, P. J.—The plaintiff instituted this suit in the circuit court of the city of St. Louis; the first count was to recover the sum of $36,702.79, for money had and received, and the second, to set aside and cancel a certain written instrument, dated St. Louis, Mo., November 1, 1906, "certifying" that the defendant had sold to plaintiff 1500 shares of stock in the Monarch Realty and Building Company, for the sum of $30,000, a part of the money mentioned in the first count, and signed by both plaintiff and defendant, which will be presently copied in full.

The suit grew out of an alleged fraudulent scheme, on the part of defendant Gardner, to defraud the plain-

tiff out of said money, which will subsequently appear from a summary of the pleadings.

Pending the litigation, the defendant went into bankruptcy, and defendant Femmer, the trustee in bankruptcy, was substituted for the defendant Gardner, and the suit has ever since been conducted against him as such trustee.

A trial was had before the court and jury, and at the close of the introduction of the plaintiff's evidence, the defendant asked an instruction in the nature of a demurrer, telling the jury that the plaintiff was not entitled to a recovery, which was by the court given. Thereupon the plaintiff took a nonsuit with leave to move to set the same aside. Said motion having been overruled, the plaintiff duly appealed the cause to this court.

The sufficiency of the pleadings is in no manner questioned, and for that reason only a summary of them will be set out for the purpose of outlining the issues.

After a careful reading of the petition, answer and reply, we are satisfied that the abstract thereof, made by counsel for the plaintiff, is substantially correct, and we will adopt it for the purposes of this case, which is as follows (formal parts omitted):

"The petition states a cause of action essentially for money had and received, seeking a rescission of a contract upon the ground of false representations.

"The averments are that the defendant, with intent to deceive, defraud and cheat the plaintiff, falsely and fraudulently represented and stated to plaintiff:

"(1)   That he, defendant, was possessed of and owned at the time bonds of the amount of $150,000 issued by the Federal Government, commonly known as Government bonds, in his own right.

"(2)   That the defendant had at the time cash on deposit in the Commonwealth Trust Co., a banking corporation, in the amount of $50,000.

"(3) That he, defendant, lived in his own house which was worth the sum of $50,000.

"(4) That he, defendant, had at the time agreed with the Commonwealth Trust Co., and the said trust company had agreed with defendant, to furnish defendant the sum of $600,000 for the purpose of financing and building a hotel on the lot described in the petition.

"(5) That on the 27th day of September, 1906, the defendant falsely and fraudulently represented to the plaintiff that he, defendant, had agreed to purchase a lot or parcel of ground, described in the petition, for the sum of $115,000, and that the defendant had given his personal check for the sum of $20,000 as earnest money or part purchase money of said lot.

"(6) That on October 8, 1906, defendant falsely and fraudulently represented to plaintiff that there was a note or notes secured by deed of trust upon said property for $16,500, and that the said note or notes were due and the holder thereof demanded payment thereof.

"And the petition avers that all of said representations were untrue and were known to be untrue at the time they were made, and that they were made by the defendant to the plaintiff, and that plaintiff relying upon said representations, and not knowing to the contrary, advanced defendant two sums of money, one on September 27, 1906, of $18,702.79, and one on October 8, 1906, of $18,000."

The answer was:

"(1) A general denial.

"(2) New matter in which the defendant claims that on September 24, 1906, he agreed with plaintiff that plaintiff should purchase the property described in the petition for $115,000, and that the plaintiff and defendant should organize a corporation to be known as the Monarch Realty & Building Co., with a capital

stock of $600,000, and that the said corporation would issue bonds and the defendant would sell the same, and that with the proceeds of the bonds the defendant would erect a hotel, the total cost of which was to be $725,000, and that as compensation therefor to the defendant he should have one-half of the capital stock of said corporation, and that the interest on the said bonds should be secured by a lease from the said Monarch Realty & Building Co. to the Joseph Gerardi Hotel Co. for a term of thirty years, at an annual rental of $60,000, payable $5000 per month, and that the defendant should spend all of his time in the negotiation of said bonds, the erection of said hotel and the promotion of said enterprise, and that the defendant should have for his services five per cent commission in addition thereto; that pursuant to said contract the lot described in the petition was purchased at $115,000, and that the defendant paid the sum of $20,000 thereon; that the sum of $18,702.79 received by defendant on September 27, 1906, was received by him as part payment upon said enterprise; that pursuant to said agreement the said corporation was organized, the plaintiff subscribing for 2500 shares, the defendant for 2500 shares, and Geo. E. Beal for 1000 shares of the capital stock of said corporation; that after the organization of said corporation and the payment of said sum of $18,702.79, plaintiff refused to go further with said enterprise, because he did not have the majority of the capital stock, but that the defendant had already incurred expense in excavating said lot; that thereupon and on October 8, 1906, the defendant agreed with plaintiff to sell to plaintiff for $30,000, 1500 shares of the capital stock he had subscribed for; that the $18,000 paid to defendant on October 8, 1906, was paid to him under said agreement to purchase 1500 shares of his subscription to said capital stock, and that the plaintiff now owed him under said purchase the additional sum of $12,000,

which the defendant now pleads as a set-off or counter-claim, and that the defendant claims an additional and further counterclaim of $6000 expended in the excavation of said lot.

"(3)  In further new matter by way of defense defendant claims that the judgment rendered in the case of Rookery Realty Loan, Investment & Building Co., plaintiff, v. Harvey L. Christie, Trustee, and Leonidas S. Mitchell, defendants, by the circuit court of the city of St. Louis, the object and purpose of which was to cancel a deed of trust upon the property described in the petition alleged or claimed to have been paid, was *res adjudicata* of the cause of action stated in plaintiff's petition, for the reason that plaintiff and defendant herein were privies to said proceeding for the cancellation of said deed of trust.

"(4)  For further defense by way of new matter the defendant pleads that the plaintiff herein, by reason of the alleged contract of sale of 1500 shares of the capital stock of the Monarch Realty & Building Co., by the defendant to him, and the payment of $18,000 upon said purchase, plaintiff is estopped from 'questioning the validity of said transaction.'

"(5)  By way of defense as new matter defendant again pleads as an estoppel of plaintiff and the cause of action contained in the petition, the judgment rendered by the circuit court of the city of St. Louis on, to-wit, February 8, 1908, in the case of Rookery Realty, Loan, Investment & Building Co. v. Harvey L. Christie, Trustee, and Leonidas S. Mitchell, alleging and claiming that both plaintiff and defendant were privies to said judgment."

For reply to the new matter contained in defendant's answer plaintiff alleges:

"(1)  A general denial.

"(2)  That the alleged or claimed contract under date of November 1, 1906, relied upon in defendant's answer, upon which he claims an estoppel and out of

which he claims arises a counterclaim of $12,000, was obtained from plaintiff in this, that the defendant, contrary to instructions and agreement between plaintiff and defendant, procured the conveyance of the title to the property described in the petition, in his own name; that he refused to convey the title to plaintiff unless the plaintiff would sign said alleged or claimed contract for the purchase of said 1500 shares of stock; that the said stock was wholly worthless, for the reason that no part of the capital stock of said corporation was ever paid by or to the parties organizing said corporation and that the corporation was wholly without property; that about the time said alleged or claimed receipt for the sale of said stock was signed by plaintiff he discovered that defendant's representations that he had $50,000 deposited in the Commonwealth Trust Co., that he owned $150,000 of Government bonds, and that he owned his own residence of the value of $50,000, were wholly false and untrue; and that the representation that the defendant had, out of his own funds, paid $20,000 for the purchase of said real estate, was false and untrue, and that in consequence of the discovery of said false statements, under which defendant had procured plaintiff's money, plaintiff was afraid of losing his property; that while the defendant agreed with plaintiff to convey said property to the Monarch Realty & Building Co., in which corporation he proposed to transfer to said Gerardi said stock after said receipt was executed, nevertheless, defendant executed a deed of trust and placed the same upon said property in favor of James P. Gardner, his brother, in the sum of $600,000, and thereafter conveyed the equity in said property to said Monarch Realty and Building Co., which rendered said equity wholly worthless, because of said property thereby being incumbered for a sum far in excess of any possible value thereof; that although said stock was wholly worthless the same was tendered back, if a ten-

der was necessary, and the same was brought in court and tendered to defendant.''

The evidence, as usual in such cases, is very voluminous, covering some four hundred printed pages. The substance of which, was testified to by the plaintiff and his father, Joseph Gerardi, Sr., and his mother, Annie Gerardi, and some ten or twelve other witnesses, whose testimony more or less corroborated the testimony of the Gerardis.

Their testimony tended to prove that the plaintiff, his father and mother, conceived the idea of purchasing the lot mentioned in the petition and to organize a corporation to which the lot should be conveyed, and which thereafter should be financed for the purpose of constructing a hotel building thereon. This was only talk—no contract was entered into between them, at that time.

About September 22, 1906, Joseph Gerardi, Sr., was introduced to defendant as a contractor and builder. In the course of their conversation said Gerardi mentioned to defendant his desire to purchase said lot for the purpose previously mentioned.

That about September 24, 1906, the defendant met the Gerardis at the Grand Avenue Hotel, which was then being conducted by them. At this meeting Joseph Gerardi, and his wife, Annie Gerardi, and the defendant, Gardner, were present. At this meeting all three of them canvassed the situation fully.

The Gerardis told defendant what their scheme was, namely, that they wanted to purchase the lot mentioned in the petition, provided it did not cost more than $115,000, which was to be paid for by the plaintiff, incorporate the realty company, and convey the lot to it for a recited consideration of $250,000, and then bond the property for $600,000 for the purpose of procuring the necessary means with which to construct the hotel building.

At this meeting defendant told them that he would like to go into the scheme with them, and that he was perfectly able to carry out the proposition; that he was a large contractor and builder, and a man of large means; that he had $50,000 in cash and $150,000 in United States bonds on deposit in the Commonwealth Trust Company, and owned and was living in a house that cost him $50,000; and that he could float the $600,000 of bonds.

That in pursuance to their conversation and those representations made by the defendant, they entered into an agreement practically as follows:

That defendant was to purchase the lot mentioned for a sum not to exceed $115,000 and to have the title conveyed to Joseph Gerardi, Jr., the plaintiff (all understanding that the whole transaction was to be done in his name and for his benefit).

That the realty company mentioned was to be incorporated and said lot was to be conveyed to it for a recited consideration of $250,000; that the corporation was to have a capital of $600,000, to be represented by 6000 shares of stock of $100 each; that the company was to borrow $600,000, with which to erect the hotel building, which the defendant said he had made arrangements for, and agreed to float the bonds; that the company was to construct the hotel building and lease it to plaintiff for thirty years, at an annual rental of $60,000, $5000 payable monthly.

That in consideration of this agreement and the services to be performed by the defendant, the company was to issue to him 2500 shares of the capital stock of the realty company. Plaintiff was to have 2500 shares of the stock and George E. Beal, the third one of the organizers, was to have the remaining 1000 shares.

That in pursuance to this contract, defendant, on September 27, 1906, went to the Grand Avenue Hotel and stated to Annie Gerardi, that he had purchased the

lot for $115,000 and had taken the title in the name of the plaintiff, and that he, the defendant, had paid out of his own funds, $20,000 of the purchase money and that he would turn the deed over to plaintiff. Later, on the same day, he repeated that statement to the plaintiff and his father, Joseph Gerardi, Sr.

Later in the day, the mother of plaintiff turned over to defendant a certificate of deposit in the National Bank of Commerce, dated July 6, 1906, for the sum of $18,702.79, payable to Joseph Gerardi, Jr., and took from defendant the following receipt:

September 27th, 1906.
Received of Mrs. Annie Gerardi one certificate for $18,702.79, the same to be payment on Kingshighway and Maryland avenue ground, dimension 215 feet on Kingshighway and 150 feet on Maryland avenue.

Harry B. Gardner.

Upon September 27, 1906, the defendant took this certificate of deposit to the Commonwealth Trust Company and obtained a cashier's check for $5000, payable to the order of Weisels-Gerhardt Real Estate Co., one of the agents through which the sale was made, as earnest money, and deposited the balance thereof, less a discount, $13,287.19, to his individual account.

On the next day, September 28th, the defendant entered into a written contract with the Euking Realty Co., another agent through which the sale was made, in his own name for the purchase of said property, which is as follows (formal parts omitted):

St. Louis, Mo., September 28th, 1906.
Received of Harry B. Gardner, through Weisels-Gerhart Real Estate Company, Agent, the sum of five thousand dollars, as earnest, the same to be retained and applied as part of the purchase money for the sale of the following described realty, lying and being situate in the city of St. Louis and State of Missouri, and described as follows, to-wit:

"A lot in city block numbered 2882 of the city of St. Louis, fronting 225 feet, more or less, on the east line of Kingshighway Boulevard, by a depth eastwardly of 150 feet along the north

line of Maryland Avenue, and by a depth eastwardly along the north line of said lot of 180 feet. The northern 10 feet of said property being subject to an easement or right of way for the free use and benefit of the owners of property abutting on the north line of Maryland avenue in said city block, for alley purposes. The price for which said real estate is this day sold being one hundred and fifteen thousand dollars, on the following terms: Twenty thousand dollars cash, less the earnest money, hereby received, and the remainder shall be paid as follows, to-wit: the purchaser herein shall assume the payment of a certain deed of trust dated September 25, 1905, executed by Thomas P. Plumeridge to secure one note for the sum of forty-seven thousand five hundred dollars, payable three years after date with interest at the rate of five per cent per annum, payable semi-annually, and shall also assume the payment of second deed of trust dated September 29, 1905, executed by L. I. Finegan for the sum of twenty-five hundred dollars, payable one year after date with interest at the rate of five per cent per annum, payable semi-annually; both of which said deeds of trust are now on said property hereinabove described. The purchaser shall also execute and deliver one principal note for forty-five thousand dollars, payable on or before thirty days from this date with interest at the rate of six per cent per annum and eight per cent per annum after maturity, to be secured by a regular balance of purchase money deed of trust upon the property sold.

General warranty deed to be given, except for the taxes for the year 1907 and thereafter, which the purchaser assumes and agrees to pay, and also excepting the easement of right of way above mentioned, and also excepting the above described deeds of trust.

The title to said property to be perfect, free from all encumbrances, liens or clouds, except as aforesaid; and in the event after an examination thereof the same should prove imperfect, and cannot be perfected within a reasonable time, then, and in that event, the earnest money hereby received to be returned to the purchaser herein, together with the cost of examination of title, and this agreement to be canceled.

Sale to be closed on or before Monday, October 8th, 1906, at the office of the Weisles-Gerhart Real Estate Company, 104 North Eight street, city and state aforesaid, and if not closed by said time, provided that all the stipulations and conditions herein contained have been complied with on the part of the undersigned seller herein, then the earnest money hereby received to be forfeited to the seller herein.

In Witness Whereof, the parties hereto have signed this agreement in duplicate originals the day and year first above written. Interest on encumbrances to be apportioned from date of deed.

This contract is made subject to owner's approval, and when so approved is binding on both parties hereto.

Euking Realty Company,<br>By L. B. Pierce, President.<br>Signed at 4 p. m. September 28, 1906.

Approved and accepted:

C. B. Gardner.

This proposition to be either accepted or rejected on or before five o'clock p. m. today.

Deed to be made to ...........................,

Grantor's full name ....:.........................

Grantor's husband or wife's name ................

Check No. 2721.  St. Louis, October 8th, 1906.

Received of Weisels-Gerhart Real Estate Co., Statement of Account to October 8th, 1906, which has been duly examined and approved as correct, showing a balance due from Weisels-Gerhart R. E. Co., of eleven thousand seven hundred and seventy-nine and 11-100 dollars, check for which has this day been received in settlement.  In re-sale of 225 feet northeast corner Kingshighway Boul. and Maryland avenue, C. B. 2881, to Harry B. Gardner, under contract dated September 28th, 1906.

Euking Realty Company.<br>By L. B. Pierce, President.

$11,779.11.

No. 331.<br>Euking Realty Co.<br>to<br>Harry B. Gardner.

N. E. Cor. Kingshighway and Maryland Ave.

Date 9-28-1906.

That from September 21, 1906, to September 27th, same year, defendant's deposit in said Trust Company was only $6.47.

That on September 29, 1906, the defendant gave a check on said Trust Company in favor of the American Tile & Slating Co. for $265, "in full of tile roofing on Kingshighway and Raymond avenue house." (The same being the $50,000 house he represented to plaintiff that he owned and was living in.)  On the same day he drew another check on said Trust Co. in favor of Thiebes-Stierling Music Co. for $251.75 and another in favor of W. A. Goodwin for ninety dollars. That on October 1, 1906, he drew a check on said trust company in favor of himself for $500; on October 2nd,

another in favor of Boeckler Lumber Co. for $229.46; on October 3d, another in favor of William Johnston for $3.55, on face of which was written, "Payment in full for gas pipe on third floor Kingshighway and Raymond Place;" and on same day one in favor of W. A. Goodwin for $125, on the face of which was written, "Payment in full for Georgia Marble and work for balance on account of Kingshighway and Raymond. place;" on October 4th, one in favor of Summer & Felter for $16.90; on October 5th, one in favor of Van Nort Bros. Electric Co., for $100, on the face of which was written, "Payment on electric work on contract of H. B. Gardner, for Kingshighway and Raymond."

The evidence also tended to show that defendant used the remainder of said deposit for his own personal account, in paying for labor and materials furnished for said residence on Kingshighway and Raymond Place and for other purposes not necessary to mention.

On the 6th or 7th day of October, 1906, the defendant telephoned to Gerardi, Sr., and his wife that there was a note for $16,500 secured by a deed of trust then due on the property he said he had purchased for the son, and that it had to be paid by October 8, 1906, either the next or second day thereafter. On the last named date Gerardi and wife went to the Fourth National Bank, taking with them some certificates of deposit in favor of the plaintiff, and thereon borrowed the sum of $18,000, which they deposited in said bank and drew a check therefor in favor of the Jos. Gerardi Hotel Co. which was endorsed by it and by Anna Gerardi and Harry B. Gardner, and delivered to the latter the defendant, for the purpose of paying him the difference between the $18,702.79 which had been given to defendant by Gerardi, Jr., on September 27, 1906, as previously stated, and the sum of $20,000 he said he had paid out of his individual funds for the property on that date, and also for the purpose of paying

off said note and deed of trust for said $16,500 just mentioned. Upon the receipt of this check, defendant said to Mr. and Mrs. Gerardi, that $18,000 was too much, that it was more than he needed, and immediately drew a check in favor of the said Hotel Company for $500, and handed it to them.

On the same day, October 8th, defendant deposited the $18,000 check in the Commonwealth Trust Co. to his individual credit.

On the same day, defendant went to Weisels-Gerhart Real Estate Co., the agents through whom he had negotiated the purchase of said property, and paid them the sum of $13,473.62, by a check drawn on said Trust Co., which was the balance, less some commission allowed defendant by the said Real Estate Company, of the $20,000 due as the first payment to be made on said property as provided for in the contract of purchase dated September 28th, 1906, previously copied herein; and at the time of paying said $13,473.62, defendant received from the Euking Realty Co., through Weisels-Gerhart, its agent, a deed conveying said property to himself and he gave his note for $45,000, the balance of the purchase money, there being a deed of trust for $47,500 on the property, which defendant assumed to pay; and secured the same by deed of trust on the property which he had recorded.

That upon the delivery of the $18,000 check by the Gerardis to defendant, on October 8, 1906, he promised them that he would pay off said note and deed of trust for $16,500, and have the same acknowledged, satisfied of record and deliver it to them, together with the deed to the property, which he told them he had taken in the name of Gerardi, Jr., at the time he purchased it.

That the Gerardis took no receipt for the last $18,000 check given to defendant, for the reason, they testified, that they thought the checks, the deposits and

deed of trust to be returned, would be a sufficient re-ceipt therefor.

The Realty Company was incorporated October 7, 1906, and H. B. Gardner, George E. Beal and Joseph Gerardi, Jr., were the organizers and each received the number of shares of stock previously stated.

Upon the receipt of the charter a directors' meeting was held and H. B. Gardner was elected president, Joseph Gerardi, Jr., treasurer, and George E. Beal, secretary.

The matter stood in this condition until about October 23rd, up to which time defendant had not delivered the deed for the property to Gerardi or the supposed canceled note and deed of trust for the said $16,500, as he had agreed to do, when he received the check of October 8, 1906, for the $18,000, when the Gerardis became suspicious and had the matter investigated by counsel.

Upon investigation counsel ascertained that the representations made to the plaintiff to the effect that he had purchased the property for $115,000, had paid $20,000 of the purchase money out of his own funds and that the title thereto had been conveyed to plaintiff, were wholly untrue; that at the time he received said certificate of deposit of $18,702.79 from the plaintiff, as a partial reimbursement of the $20,000 he represented to plaintiff he had paid on the purchase price of the lot, he had not even entered into the contract of purchase; that subsequently, when the contract of purchase was entered into, it provided that the title thereto should be conveyed to him, the defendant, instead of the plaintiff, as was agreed to; also that there was no note and deed of trust for $16,500 against the land, as defendant represented, and which he said had to be paid on or before October the 8th, for the payment of which the plaintiff gave to defendant the check for the $18,000 previously mentioned.

Upon learning these facts the plaintiff repeatedly demanded of the defendant a return of the $36,702.79 he had advanced to him, but he, as often as requested to return the money, declined to so do; and finally, after proposing several schemes of settlement, instead of returning the money, the defendant proposed to plaintiff that he would convey the property to the Real Estate Company and transfer to him, Gerardi, Jr., 1500 shares of his stock in said company, provided he would sign the receipt or "certificate" dated November 1st, previously mentioned, and to be presently set out. That after considering the proposition, and after consulting with his attorney regarding the matter, plaintiff signed said receipt or contract, which is as follows:

> St. Louis, November 1st, 1906.
>
> This is to certify that I have sold and delivered to Joseph Gerardi, Jr., certificates number one for fifteen hundred shares of the capital stock of the Monarch Realty and Building Company, said shares being a part of my original subscription of twenty-five hundred, for the sum of thirty thousand dollars, the receipt of which I hereby acknowledge as full consideration therefor.
>
> Harry B. Gardner,
> Joseph Gerardi, Jr.

That plaintiff never paid defendant the $30,000 mentioned in the receipt or any part of it, and never intended to so do, as plaintiff testified that it was intended to release defendant to that extent from his liability to him, the plaintiff, for the $36,702.79 procured from him in the manner previously stated and in pursuance to the terms of the settlement just mentioned, and for which the receipt was given.

That in violation of said settlement, evidenced by said receipt of November 1st, the defendant executed a deed of trust on said lot, dated October 19, 1906, in favor of his brother James P. Gardner, to secure the sum of $600,000, but not acknowledged until November

5, 1906, at 10:20 a. m., five days after the date of the receipt, and was not recorded until February 14, 1907.

That plaintiff had no knowledge of the existence of this deed of trust or its recordation until some time after he signed the "certificate" of November 1, 1906.

That defendant, by a general warranty deed, dated October 19, 1906, conveyed said property to the said Real Estate Company, acknowledged October 30, 1906, and filed for record by him on November 5, 1906, at 10:25 p. m., just five minutes after he had recorded the deed of trust for $600,000 to his brother.

That the said Real Estate Company never had any property or means whatever, except this property which was conveyed to it by the defendant on November 5, 1906, subject to the two deeds of trust of $45,000 each and a small interest note of $2000 or $3000 and the one for $600,000 payable to defendant's brother, James P. Gardner, which property was not worth more than $150,000 at the outside.

That defendant never built the hotel he agreed to, nor sold any of the bonds he agreed to float. In fact, they were never issued, nor had defendant made any arrangement for their issuance.

That the title to the residence defendant represented to the plaintiff that he owned, was living in and was worth $50,000, was in his wife; that he did not own any United States bonds as represented by him; and instead of having $50,000 in cash deposited in the Commonwealth Trust Company, he had only $6.47 deposited therein.

The defendant introduced no evidence, but in the cross-examination of plaintiff's witnesses, in connection with the written instruments introduced by him, counsel for defendant insist that plaintiff's own evidence shows that he is not entitled to a recovery.

This insistence grows chiefly out of the receipt or bill of sale dated November 1, 1906, wherein it is recited that defendant sold to plaintiff 1500 shares of

his stock for $30,000, to which he adds, if I understand the record, certain commissions he claims, expenses incurred for plans and specifications, and costs of excavating a portion of the foundation for the hotel, making a total in excess of the amount of money received from plaintiff.

Counsel also asked plaintiff this question:

"Q. Isn't it a fact, Mr. Gerardi, that on the 6th day of October, Mr. Gardner wrote out a paper, and I will read it to you, and see if you can recall it. This paper that I refer to, Mr. Gerardi, was written out as a memorandum, written on a blank form of check, I think on the Mississippi Valley Trust Company, and written by Mr. Gardner, and is as follows: 'October 6, 1907. I will carry out the agreement. Gerardi is to pay a hundred and fifteen thousand dollars for the ground and thirty thousand dollars for stock. I guarantee to furnish six hundred thousand dollars of mortgage bonds to build a hotel with. Harry B. Gardner.' Then on this side is: 'Mrs. Gerardi and son agree to pay me thirty thousand dollars for a hundred and fifty thousand of Monarch Realty & Building Company's stock. By first agreement Gerardis agreed to pay a hundred and fifteen thousand dollars for the lot, or a hundred and forty-five thousand dollars. Gerardis get forty-nine hundred and ninety-five shares, I get one thousand shares and Beal gets five shares. I am to build a hotel and get six hundred thousand dollars first mortgage bonds for it. Harry B. Gardner.' Did you ever hear of a paper to that effect?"

To which he answered, "No, sir."

This paper was not offered in evidence; and after refreshing his memory plaintiff stated that he remembered the paper and that he thought it was introduced in evidence at a former trial; and I judge it was introduced by his attorney; however, this is not quite clear, but I will treat it as so offered by him for the purposes of this case.

There was other evidence introduced bearing up-
on the relations that Beal bore to the plaintiff and de-
fendant, but that evidence has no special bearing upon
the questions involved in this appeal, but relates spe-
cially to the cross-bill filed by the defendant, which
was by him dismissed, and therefore it would be use-
less to incumber this statement with that evidence.

Such additional evidence as may be necessary to
properly present the legal propositions involved will
be stated in connection therewith in the opinion.

I. There are but two legal propositions of any im-
portance presented by this record, and they are: first,

Money Had and
Received: False
Representations.
was the evidence sufficient to set aside
the receipt or bill of sale dated Novem-
ber 1, 1906, read in evidence? and, sec-
ond, was there sufficient evidence intro-
duced by the plaintiff to carry the case to the jury?

For convenience, we will consider those proposi-
tions in the inverse order in which they are stated.

(In order to make the evidence intelligible, it
should be borne in mind that all of the Gerardis were
acting for and in behalf of Joseph Gerardi, Jr., the
plaintiff.)

Regarding the second: The plaintiff's evidence
tended to show, and for the purpose of this case the
defendant's demurrer thereto admits its truthfulness,
that Joseph Gerardi, Jr., prior to his meeting the de-
fendant, had under consideration the purchase of the
lot of ground described in the petition and mentioned
in the evidence, with a view of organizing a corpora-
tion, conveying the lot to it, and constructing a hotel
building thereon, to be leased by it to him for a period
of thirty years, at a rental of $60,000 per annum, $5000
payable monthly.

After having formulated the general scheme of
the proposition, the father of plaintiff, by chance, as
I take it, met the defendant in the Grand Avenue Hotel,

and was introduced to him as a contractor and builder. This introduction suggested the hotel scheme young Gerardi had in mind, and the father mentioned it to the defendant, who immediately became interested therein; and by mutual understanding they entered into a discussion of the scheme in detail.

After thus discussing the proposition, defendant stated in substance that he would consider the proposition; and about September 25, 1906, the defendant called upon the Gerardis and told them that he would like to undertake the execution of the scheme previously mentioned, upon the terms and conditions to be presently stated.

That as an inducement for plaintiff to enter into the contract with the defendant, the latter represented to the former that he was a large contractor and builder, and had constructed large buildings in St. Louis and Chicago, and was fully capable of building the hotel the plaintiff had in mind. That he was also financially able to carry the plan into execution, in that he had a deposit in the Commonwealth Trust Company of St. Louis of $50,000 cash and $150,000 in United States bonds; that he owned and was residing in a house that cost him the sum of $50,000 and that he had made arrangements with said Trust Company to float the $600,000 worth of bonds, the proceeds of which were to be used in the construction of the hotel.

That relying upon the truthfulness of those representations the following oral agreement, in substance, was entered into between them:

That plaintiff agreed that the defendant should purchase the lot upon which the hotel was to be erected and have it conveyed to him, the plaintiff, provided it did not cost more than $115,000.

That he, the plaintiff, the defendant, and one Beal would organize a corporation under the name of the Monarch Real Estate & Building Company, with a

capitalization of $600,000, divided into six thousand shares of $100 each. That plaintiff was to pay for the lot and convey it to the corporation for a recited consideration of $250,000. That the corporation was to issue $600,000 worth of bonds secured by a first deed of trust upon the lot and the hotel building to be erected thereon.

That defendant agreed to have the Commonwealth Trust Company float or sell said bonds, the proceeds of which were to be used in erecting the building upon the lot. That the corporation was to lease the hotel building to the plaintiff for a period of thirty years, at an annual rental of $60,000, payable in monthly installments of $5000.

That the defendant agreed to float the bonds before mentioned, draw the plans and specifications for the hotel building in conformity to plaintiff's ideas and construct the building according to said plans.

In consideration of this agreement plaintiff and defendant were each to have 2500 shares of the capital stock of the corporation, and Beal was to receive 1000 shares thereof, not pertinent to the questions here presented.

We will now briefly mention the evidence which tends to show that the defendant made the false representations with which plaintiff charges him as an inducement for entering into the contract and upon the strength of which he claims he parted with the money sued for.

The evidence not only tends to show, but the demurrer admits, that the defendant did not own the house in which he resided, and which he said was worth $50,000; that he had no United States bonds deposited in the Commonwealth Trust Company or elsewhere, so far as this record shows; nor did he have deposited therein the sum of $50,000 in cash, as represented by him, but in truth and fact, he had only $6.47.

The demurrer to the evidence admits that these representations were made; that they were relied upon and that they were false, and consequently he was not able to perform his part of the contract. Not only that, the evidence for the plaintiff tends to prove the grossest kind of a fraud perpetrated upon plaintiff, arising or descending, as you may choose to term it, to a "confidence game" of the filthiest water, in this: the plaintiff, relying upon the financial standing and ability of defendant to perform his part of the contract, orally instructed him to purchase the lot mentioned, for him, for a sum not to exceed $115,000, and to take the title thereto in his, the plaintiff's, name, which he agreed to do. That subsequently he reported to the plaintiff that he had purchased the property for $115,000, and had it conveyed to him, the plaintiff, and that he, the defendant, had with his own funds, paid the sum of $20,000 as part of the purchase money thereon, all of which was false.

In order to partially reimburse defendant for the $20,000 he represented to the plaintiff he had so paid on said lot, the plaintiff indorsed to him a certificate of deposit on the National Bank of Commerce, for the sum of $18,702.79, and took his receipt therefor.

The evidence is undisputed that at that time, September 27, 1906, the defendant had neither purchased said lot, nor had he paid said $20,000 or any other sum for the plaintiff as a part of the purchase price thereof. As a matter of fact, he never purchased said lot until September 28, 1906, as shown by the written contract introduced in evidence and copied in the statement of the case.

Moreover, said contract shows that when he, the defendant, entered into the contract of purchase, it provided that it should be conveyed to the defendant instead of the plaintiff, as the former was instructed and agreed to do.

Not only that, the contract shows that he only paid $5000 of the purchase price of the lot and expended the remainder of the $18,702.79 he received from the plaintiff, for his own personal benefit.

In addition, said contract shows that the defendant was to assume the payment of a $45,000 mortgage on the property, execute another for a like sum payable in thirty days, and $15,000, less some commissions defendant was allowed for negotiating the sale, was to be paid on or before October 8, 1906.

In order to meet this $15,000 payment, the defendant telephoned the plaintiff and falsely stated that there was then due and unpaid a mortgage of $16,500 on said lot, which had to be paid on or before said 8th day of October.

The plaintiff believing said statement to be true, gave defendant a check, as before explained, for $18,000, for the purpose of paying off and discharging said mortgage, and to pay him the difference between the $20,000 he falsely represented to plaintiff he had paid September 27th on said purchase price, and the amount of the certificate of deposit he indorsed and delivered to defendant on that day for $18,207.79.

Upon the receipt of the check for the $18,000 dated October the 8th, defendant stated to plaintiff that he did not need that amount of money, for the two purposes above mentioned, and gave back to him a check for $500.

The defendant then took the $18,000 check and deposited it in the Commonwealth Trust Company and then drew a check in favor of the Weisels-Gerhart Real Estate Company, for the sum of $13,473.62, being the balance of the $20,000, due on the first payment under the contract of purchase, less a commission which was allowed by that company to the defendant for his assistance in negotiating the sale of the lot.

Gerardi v. Gardner.

The plaintiff testified that he took no receipt from defendant for this $18,000, for the reason that at the time of the delivery of the check, defendant said to him that he would cash the check and with the proceeds thereof pay off said mortgage and return it and the deed to the property to him, which defendant had previously stated to plaintiff had been previously conveyed to him, all of which plaintiff said he thought would be a sufficient receipt for the money.

But be that as it may, there is no question but what defendant received this $18,000, just as he did the $18,702.79, on September 27th, and instead of paying off the fictitious mortgage for $16,500, with the proceeds thereof, the falsely alleged purpose for which he procured the money, he went to Weisels-Gerhart Real Estate Company as previously stated and paid therewith the balance of the $20,000 due October 8th, under said contract of purchase; thus showing conclusively that defendant by false and fraudulent representations procured from plaintiff $36,702.79, less the $500 check he gave to plaintiff before mentioned.

I say false and fraudulent representations, for the reason that defendant procured said $36,702.79 from plaintiff upon the false representation that he had purchased the lot for the latter and that the deed thereto conveyed the lot to the plaintiff. By those false and fraudulent representations he procured from plaintiff the $36,702.79 and used the same in making the first payment, $20,000, due upon the lot, which he had purchased for himself instead of for the plaintiff, and the balance thereof he expended for work performed and materials furnished upon and for the use of the $50,000 residence his wife owned, but which he represented to plaintiff he owned.

This is as clean cut case of fraud and confidence game as I ever read of.

We are, therefore, clearly of the opinion that the evidence made a prima-facie case for the jury.

II. If we correctly understand the position of counsel for defendant, they do not seriously controvert any of the material matters and things stated, and upon which our conclusions in paragraph one of this opinion are based, but seek to escape the *legal* effect thereof by contending that the whole matter was adjusted and settled by virtue of the written instruments dated October 6, 1906, and November 1, 1906, respectively, and read in evidence and set forth *in haec verba* in the statement of the case.

Money Had and Received: Contract of Settlement.

The former starts out with the frank statement that "I [the defendant] will carry out the agreement," referring to his original contract to construct the hotel building, etc., provided the plaintiff would pay the sum of $115,000 for the lot, and $30,000 for stock (to whom? Presumably to plaintiff). In consideration of which defendant "guaranteed to furnish six hundred thousand dollars of mortgage bonds to build *a hotel.*" Exactly what he had agreed to do under the original contract, and before he had fraudulently procured from the plaintiff said $36,702.79.

So far, I suggest there is not much consideration to support this contract (in fact it is $36,702.79 less than nothing) if it may be so called, as it was written upon the back of a blank check of the Mississippi Valley Trust Company and only signed by the defendant.

The remainder of this alleged contract, which was written on the other side of that blank check and signed by defendant alone, has no special bearing upon the questions under consideration, but relates more particularly to the interest of Beal, and a repetition of some of the facts purporting to have been agreed to, as stated on the other side of this check; also a recitation of some of the facts agreed to in the original contract, as well as the number of shares that he and Beal were to receive under the modified agree-

ment, which, as previously stated, has no particular bearing upon the questions here presented; but whether it does or not, it can in no manner affect the result to be reached.

The contract dated November 1, 1906, which constituted the basis of the second count of the petition and which prayed for its cancellation, deserves more serious consideration.

In passing, it may not be out of place to state that the circuit cou..t and counsel for both parties, as I understand the record, treated this contract more in the nature of a receipt than as a contract; but we will consider it as a contract and consider the evidence bearing upon its execution and see if it is sufficient to warrant this court in setting it aside for fraud as charged in the second count of the petition, notwithstanding the ruling of the circuit court to the contrary.

For convenience, I will reproduce said contract at this place:

"St. Louis, November 1, 1906.

"This is to certify that I have sold and delivered to Joseph Gerardi, Jr., certificate number one for fifteen hundred shares of the capital stock of the Monarch Realty and Building Company. Said shares being a part of my original subscription of twenty-five hundred, for the sum of thirty thousand dollars, the receipt of which I hereby acknowledge as full consideration therefor."

(Then follow the signatures of the parties.)

Practically all of the evidence bearing upon the execution of this contract consists of the oral testimony of the plaintiff and his father and mother; the defendant introduced no evidence at the trial.

The plaintiff's evidence regarding the execution of this contract was substantially as follows:

That when defendant received from plaintiff the check dated October 8, 1906, for $18,000, he agreed

to pay off the alleged mortgage of $16,500 and to deliver it to plaintiff with the alleged deed conveying the lot to him. Having received neither, plaintiff's sleepy suspicions for the first time became aroused as to the fidelity of the great builder, the man of large means and a financier of great enterprises. This suspicion led plaintiff to employ the learned counsel who represents him in this case, to investigate the entire transaction, which clearly revealed the fact that plaintiff and his relations were a set of silly dupes, apparently needing a guardian to manage their business, much more than a hotel in which to cater to the public.

But be that as it may, the defendant again took advantage of their confiding cordiality, and according to defendant's contention he sold to plaintiff a "gold brick" for $30,000, which was worth at the very lowest estimate $510,000 less than nothing; but according to plaintiff's contention, when he discovered the base perfidy of defendant, he set about, under the advice of counsel, to save the wreckage which he thought was in sight, namely, the $20,000 out of the $36,702.79, which he had advanced to the defendant on the purchase price of the lot, which had been conveyed to the defendant, as previously stated.

The defendant, being equal to the occasion and with a design to retain his ill-gotten gains, refused to return to plaintiff the $36,702.79, or any part of it, but began to hatch different schemes, not in settlement of the barefaced fraud he had committed against the defendant, but to thwart any and all legal proceedings the plaintiff might take to redress his grievous wrongs.

Bear in mind, the plaintiff, wanting to receive a conveyance of the lot from plaintiff upon which $20,000 of his money had been paid upon the purchase price, suggested to defendant, after various schemes had been advanced by the latter, that if the defendant would convey the lot to him subject to the incum-

brances thereon as shown by the contract of sale to defendant, dated September 27, 1906 (which he, the defendant, was both legally and morally bound to do, for the reason that he had purchased it as the agent of the plaintiff, and paid the first installment of the purchase price out of the money of plaintiff), and transfer to him 1500 shares of the stock of the Monarch Real Estate & Building Company, he, the plaintiff, would cancel and release $30,000 of the $36,702.79 the defendant had defrauded him out of.

Seizing upon this proposition to further consummate his fraudulent design, the defendant agreed to the proposition made by the plaintiff and drew up the contract of November 1st, previously quoted, reciting only a part of the terms of the settlement, namely, the sale of the 1500 shares of the stock to plaintiff for $30,000, but omitted to state therein that he was to convey to the plaintiff the lot in question without which the stock was not worth the paper upon which it was printed, as the corporation had not a dollar or any means.

But in pursuance to said proposition, the defendant did convey said lot to the plaintiff five minutes after he had executed a deed of trust upon the same to his brother to secure a note for the sum of $600,000, the *bona fides* of which, in so far as the brother is concerned, is not questioned.

The incumbrances placed upon the lot by the defendant were many times its value, which of course rendered the value of the entire stock absolutely worthless, for the reason stated, that the corporation had not a dollar of money or assets, except this lot, which, when conveyed to the company, was incumbered for some $663,000, while it was not worth more than $150,000 at the outside limit.

In short, the defendant has by his fraudulent representations obtained from plaintiff the sum of $36,-

702.79, less $500, check given by defendant to plaintiff on October 8, 1906, leaving a balance of $36,202.79.

We are, therefore, of the opinion that the contract mentioned, dated November 1, 1906, should be set aside and for naught held, and it is so ordered.

III. Counsel for defendant finally insist that the plaintiff is not entitled to a recovery because he did not tender back to defendant the 1500 shares of stock mentioned in the contract of November 1, 1906.

<span style="float:left">Restoring Status Quo.</span>

There is no merit in this insistence, because they are not worth a cent, not even the paper upon which they are written.

But independent of that, the undisputed evidence conclusively shows that by his fraudulent representations, the defendant has procured from plaintiff $36,202.79, the lot in question, except the naked legal title, not worth a cent, and he still retains 1000 shares of the stock, while the plaintiff has received only 4000 shares of absolutely worthless stock, for the money advanced by him.

The judgment is reversed and the cause remanded with directions to the circuit court to retry the case in conformity to the views herein expressed. All concur, except *Bond, J.*, not sitting.